```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
```

GORDON BOCK,

      Plaintiff,

      v.                           File No. 1:05-CV-149

STEVEN GOLD, JANICE RYAN,
RAYMOND FLUM, JOANNE PEREIRA,
THOMAS DUNN, MICHAEL CARLISLE,
CORT JOHNSON, CYNTHIA NICHOLS,
KIT ANDREWS, JASON PATRISSI,
DAVID LEE, JAMES BEDARD,
SHAWN SMITH, and JOHN MURPHY,

      Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### (Paper 114)

Defendants Steven Gold, Janice Ryan, Raymond Flum, Joanne Pereira, Thomas Dunn, Michael Carlisle, Cort Johnson, Cynthia Nichols, Kit Andrews, Jason Patrissi, David Lee, James Bedard, Shawn Smith and John Murphy move for summary judgment on the remaining claim against them. Paper 114. The Court assumes familiarity with the facts and procedural background of this case. For the following reasons, Defendants are entitled to qualified immunity and the motion is granted.

I.   Standard of Review

On a motion for summary judgment, a court assesses the evidence, viewing it in a light most favorable to the non-moving party. Adjustrite Sys., Inc. v. GAB Bus. Serv., Inc., 145 F.3d 543, 547 (2d Cir. 1998). If "there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a

matter of law, then summary judgment is appropriate. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). A "material fact" is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1984). A "genuine issue," in turn, means the evidence diverges enough to support a finding in favor of either party. Id.

II. Discussion

Plaintiff Gordon Bock's remaining claim alleges a procedural due process violation under 42 U.S.C. § 1983, stemming from the Defendants' revocation of Bock's furlough status while he served as an inmate of the Vermont Department of Corrections. To prevail on the merits of this Fourteenth Amendment procedural due process claim, Bock must demonstrate (1) he had a liberty interest that was deprived, and (2) the procedures afforded were inadequate. See, e.g., Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001); Arce v. Walker, 139 F.3d 329, 333 (2d Cir. 1998).

In their motion for summary judgment, Defendants argue the affirmative defense of qualified immunity. Qualified immunity doctrine protects government actors from liability in damages unless they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity inquiry has two steps. First, the court asks

2

whether a plaintiff has shown facts that violate a constitutional right.  Second, if a violation is shown, the court asks whether the right in question was "clearly established" at the time of violation.  See Saucier v. Katz, 533 U.S. 194 (2001).  The defendant receives qualified immunity unless both prongs are answered in the affirmative.  Id.

The Supreme Court recently clarified that courts can reverse the order of the qualified immunity inquiry, and start with the question of whether the right was "clearly established."  Pearson v. Callahan, 129 S. Ct. 808 (2009).  This is appropriate in cases where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  Id. at 818.  By proceeding directly to the question of whether the right was "clearly established," courts avoid adjudicating "difficult questions that have no effect on the outcome of the case."  Id.

Defendants argue, and the Court agrees, that it is proper to address step two of the qualified immunity inquiry first in this case.  The dispositive question is whether it was "clearly established" that Bock had a constitutionally protected liberty interest in his furlough status.  Because this question must be answered in the negative, the more cumbersome merits issue – whether a liberty interest actually existed – becomes academic

3

and need not be decided.  See Pearson, 129 S. Ct. at 818; Dean v. Blumenthal, 577 F.3d 60, 68 (2d Cir. 2009).

In analyzing whether a constitutional right is "clearly established," district courts ask whether "the Supreme Court or the Second Circuit has recognized the right." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).  The right must be recognized "on a . . . specific level," not merely as a general principle.  Saucier, 533 U.S. at 200.  In particular, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  Id. at 202.

Whether a liberty interest exists is a fact-intensive question.  In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court looked at the situation of a prisoner in Iowa's parole system, and noted:

> [H]e can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.  Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Id. at 482.  On this basis, the Court found a due process liberty interest.  Id.  More recently, the Court examined Oklahoma's pre-parole system in Young v. Harper, 520 U.S. 143 (1997), and compared it with the parole system in Morrissey.  Finding a

4

strong resemblance on the facts, the Supreme Court held a liberty interest existed in pre-parole status in Oklahoma. Young, 520 U.S. at 145. As a fellow district court noted shortly after the Young decision,

> Young makes it clear that the inquiry into whether an inmate is entitled to a hearing before being removed from a conditional release program is highly fact-specific. . . . "[S]imply applying the label 'work release' to a program does little to advance analysis of it . . . . [The Court] must look specifically to the inmate's own program to determine what liberty interests are affected."

Pena v. Recore, No. 95-CV-5307, 1997 WL 581058, at *7 (E.D.N.Y. Sept. 16, 1997) (unreported) (quoting Edwards v. Lockhart, 908 F.2d 299, 302 (8th Cir.1990)) (alterations in original).

No federal precedent – Supreme Court, Second Circuit, or otherwise – has clearly established a liberty interest in Vermont's conditional release system. The Second Circuit found a liberty interest in work release status under New York's Temporary Release Program, see Anderson, 317 F.3d at 201; Friedl v. City of New York, 210 F.3d 79 (2d Cir. 2000); Kim v. Hurston, 182 F.3d 113 (2d Cir. 1999), but these holdings are fact-dependant and do not establish a liberty interest in Vermont's Conditional Release program. See, e.g., Kim, 182 F.3d at 118 (examining a particular phase of New York's Temporary Release Program and comparing it to the Oklahoma pre-parole system from Young).

5

The Second Circuit did address Vermont's conditional release program once, in Holcomb v. Lykens, 337 F.3d 217 (2d Cir. 2003), but the court declined to decide whether Vermont prisoners have a liberty interest in furlough status. Rather, the court assumed for purposes of argument such a liberty interest existed and was clearly established, and then held that adequate process was received in any event. Id. at 223-24. The fact-dependant nature of the inquiry was apparent from the court's opinion. See id. at 222-23 (distinguishing between extended and non-extended furlough, as well as between termination and refusal to renew furlough).

This Court examined an earlier version of Vermont's furlough system at least twice, and both times declined to find a liberty interest under the Due Process Clause. See Dougherty v. Gorczyk, No. 2:99-cv-225, slip op. at 16-19 (D. Vt. Jan. 30, 2001) (Niedermeier, Mag. J.), adopted, slip op. at 1 (D. Vt. Mar. 7, 2001); Verchereau v. Gorczyk, 1:99-cv-315, slip op. at 4-8 (D. Vt. Sept. 13, 2001) (Niedermeier, Mag. J.), adopted, slip op. at 1 (D. Vt. Sept. 26, 2001). Though it would not necessarily bind this Court, see Holcomb, 337 F.3d at 222 n.5, the Vermont Supreme Court also found no federal due process liberty interest in retaining furlough status. See Conway v. Cumming, 636 A.2d 735 (Vt. 1993).

6

Because no precedent establishes a liberty interest in furlough under Vermont's conditional release program, this Court recently concluded in a similar case that the matter was not "clearly established" for qualified immunity purposes. See Ladd v. Thibault, No. 1:08-cv-255, slip op. at 21-29 (D. Vt. Sept. 3, 2009) (Conroy, Mag. J.), adopted, slip op. at 1 (D. Vt. Oct. 6, 2009). The Court reaches the same conclusion today.

Bock argues against this result, citing the Vermont statute creating the conditional release program, Vermont Department of Corrections (DOC) regulations, training procedures for DOC officials, and depositions allegedly showing actual knowledge of a liberty interest by the Defendants. See Paper 117. To the extent these things are relevant, however, they would go to the merits question (whether a liberty interest actually exists) not to the question of qualified immunity (whether the liberty interest was "clearly established"). See Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).

III. Conclusion

The Court finds it was not "clearly established" that Bock had a liberty interest in his furlough status, and Defendants are entitled to qualified immunity. Therefore, the Defendants' motion for summary judgment is GRANTED.

7

Dated at Brattleboro, in the District of Vermont, this 25th day of January, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge